It is Christopher v. Army, 2008-31-84. Try them on when you're ready. If it pleases the court, my name is Jo Reed Brownlow. I represent Sylvester Christopher. He was an employee of the Corps of Engineers and worked as a metal worker welder when he worked for the Corps of Engineers. He was charged by the agency two charges, one of making an inappropriate comment in the work terms and a second that he had falsified the optional form 306. This is the document that is completed on the day that he begins his work at the Corps of Engineers. Based on this, the administrative judge found that the agency had failed to provide the ponderant evidence that the falsification had occurred. He mitigated the penalty to a 14-day suspension based on the signing official's testimony. In this appeal, the board's decision... The problem here is that on this form, when he answered the form, it sounded as though there had only been one conviction. He admitted in his testimony that he remembered at least two, as I understand it. And the board found that that was not a complete answer to the question and that his action was reckless. And so what's the problem with that? Well, I think it goes to the intent. I think this is a case that's very similar to the line of cases in Leatherberry, Naval, Haiti, where the board presumes intent just based on the fact that there's a false statement on the document. They have... In these lines of cases, what I noticed was the standard where the board was reversed by this court was where the administrative judge heard the evidence, made certain credibility determinations, both implicit and explicit, and then arrived at a judgment that for whatever reason there was a failure of proof as to the falsification charge. Generally, it had to do with a lack of intent. And generally, it was based on the credibility determinations and the judge that heard the case being able to hear the case, be in the courtroom, know what was going on. I think a prime example of this is that the board states that Mr. Christopher's testimony itself rebuts what the administrative judge had found, that there was no intent to falsify the statement. And they do this based on the record. I believe it's that page of the joint appendix, page 184 and 85, that they cite. In that particular exchange, it's during cross-examination, the agency attorney is reading from the NCIS report and saying, Do you deny this? Do you not deny that? And he's reading these charges and he's saying, I did it, I did it, I did it. Then you get later on to what was in the mind of Mr. Christopher at the time he filled out his optional form 306. What did he remember? What did he know? And he testified at 194 that he knew about two instances, even though he'd only reported one. Actually, what he reported was so little that it's not even clear that he reported any at all, to be quite honest with you. What he said was between 1996 and 1998, my wife and I had squabbles and I was placed on probation and that the probation has now ended. And what the presiding official said, the judge said, was that this was so non-responsive to what the form asked for at item 9, that on its face, clearly he did not put down the information that will respond to the information requested at item 9. Let me interrupt you. I'm confused as to what the issue we're discussing is, because we're not retrying the evidence as to whether he intended to lie or didn't intend to lie. We can't do that. That's what the board does. The question, and we have a very limited review of what the board does, the issue in this case on that issue, whether he lied or not, is there any substantial evidence in the record on which the board could have believed he lied? And surely you're not contending there's no evidence at all that they could believe, are you? I'm not saying there's no evidence at all. But I am saying, as the case law has held, that the Merit Systems Protection Board appoints its judges to act for them. They cannot come back around once their judges have weighed the evidence and listened to the evidence and made credibility determination through the warmth of a hearing. They can unless, as I understand the law, you may correct me if I have it wrong, unless the specific finding at issue is one of testimonial credibility, the argument being that the AJ sees the individual and feels what the individual is like, whereas we deal and the board deals on a cold record. What is it in this case that makes you think that the AJ's decision critically turned on a question of specific credibility? Well? As distinct from the set of facts, which included he didn't disclose the information, which apparently the board believes he knew, and that he covered up the fact that all these events had occurred and so it came out. There's all kinds of evidence in there. What is it that makes you think the whole case turns on some issue of credibility? That's what I'm not clear on. Okay. The judge in his decision found Mr. Christopher to be truthful. He believed him. He said, I believe that you did not remember the charges. And further over in the investigation. Can you point to that? The only thing I found is in the page 42 of the blue brief, that the only thing I found that even suggests such a finding is the language on page 42 at the back of the blue brief, where AJ said, moreover, I believe the appellant's testimony that Mr. Jarrell told him that, if additional details were required, they could be provided later for Mr. I think the for there could be read as since. They could be provided later since Mr. Jarrell, an experienced personnel specialist, accepted the appellant's 0F306, notwithstanding the appellant's failure to provide the date explanation, et cetera, et cetera. I take that as a limited statement that, indeed, he did believe Mr. Jarrell, the appellant's testimony, that that's what Mr. Jarrell had told him. I think that's probably true. Well, let me put it this way. I think it's clear that the AJ believed Mr. Krister's testimony that that's what Mr. Jarrell told him. But that doesn't turn the whole case on credibility, does it? Well, it doesn't. Is there some other language in the opinion that I've missed? Well, in complement. In the AJ's opinion, is there something else that suggests it's a credibility determination? Did I miss it? What I have written down here was that the administrative judge, and I apologize, I don't have the joint appendix right here in my notes in front of me, found that the testimony that he informed the personnel specialist of the arrest, which were the result of domestic disputes with his wife, he found that he, and this goes to the employee's good faith explanation to the court. Let me see if I can help you here. As I understand your argument, Christopher testified that he told Jarrell that there were multiple convictions, and Jarrell denied that. But the AJ here believed Christopher in his testimony when he said that he told Jarrell that he had multiple convictions, and Jarrell said, don't worry about it. If they want something more, they'll ask for it. And that that is a credibility finding based on Christopher's demeanor. Now, assuming that that's what the record shows, is that really a sufficient excuse for not reporting these multiple convictions when the form is quite clear that you're supposed to do that? That seems to me the heart of the question here. And the heart of the question is not, I believe, whether the form was wrong. And although I don't believe that he lied on the face of the form, you have to take the next step because there's a series of hoops that you have to get through on the falsification charge. Was it false? Was it material? Was there an intent to deceive? But the intent doesn't require specific intent. It can also be reckless behavior. That's what our cases say. It can be reckless. And it's what I understand the board to have found is that Christopher was reckless in answering this question in a way that suggested there had only been one conviction when he admitted that he recalled at the time at least two. Yes, the board did find that it was reckless. And the presiding official who heard the testimony and weighed the evidence found that there was not intent to mislead, that the circumstances that you could not infer from the circumstances of this case that there was an intent to deceive the government. He checked it. Wait a minute. I'm sorry, but the decision of deciding what you call a deciding official, the A.J., carries no weight. We don't review the A.J.'s decision. We only review the board's decision. We have no authority to review what A.J.'s do. We only have authority to review decisions by the board.  The board having chosen to make a decision independent of the particular A.J.'s, if you will, recommendation in the case. So help focus on what the board did, because that's really the only thing we are authorized by statute to review. The board substituted and re-weighed the evidence. Which they're entitled to do. Only if the presiding official or the judge's opinion is not based on substantial evidence or is not in accordance with the law. And there's no indication that that was the case in this particular situation. Do you have the administrative judge's opinion there before you? Yes, your honor. Okay. Can you point us to exactly what you find as support for the proposition that the administrative judge specifically made a demeanor-based credibility determination with respect to the portion of your client's testimony in which he said that he told Mr. Jarrell about the convictions? Maybe I'm missing something, but the thing I'm spotting here is at the top of page 7 of the opinion, the judge says I find it infinitely improbable, given the sequence of events, that the appellant willfully failed to disclose the particulars of his convictions in light of his answer to item 9. That's all I see on that issue. Am I missing something? Is there another portion somewhere? Okay. In the next paragraph of the last text, I find no intent to mislead or deceive as to appellant's criminal record. Moreover, I believe the appellant's testimony that Mr. Jarrell told him that if additional details were required, they could be provided later. For Mr. Jarrell, an experienced personnel specialist accepted the appellant's… Right, right. This isn't with reference to the specific point that I'm alluding to. I'm trying to get at the question of whether with respect to the, it seems to me, pretty important question of whether the sequence of events, according to your client, is the following, as I understand it. He checks yes in response to question 9. He then goes down to question 16 and he puts in this, I think we can all agree, quite… It's sort of what in the old days used to be called a modified limited hangout. It's a limited account of his criminal history. And on its face, if that's all we had, that would be pretty clearly misleading. But in between, he says now what happens is he asks Mr. Jarrell and Mr. Jarrell, he then tells Mr. Jarrell, well, I had a couple of misdemeanor convictions. And at that point, he says, Mr. Jarrell says, well, that's all right, don't worry about it. They'll look into this. As to the, I had a couple of misdemeanor convictions. The only thing I see that supports that is the inference that the administrative judge draws from the underlying facts, not credibility, but just the circumstances where the administrative judge says it's inherently improbable that he would willfully falsify his answer and not disclose the particulars of his convictions because he already checked yes. If he wanted to falsify it, he'd check no. Well, I don't think killing is the case that this judge, this court pays a lot of attention to because it's an MSPB case. But what the standard says is the judge must make credibility determinations, but it must, the judge must also state anything else that helps support his intention. Right. But this observation that the court is making about general human nature, you don't check yes if you're trying to lie is what he basically says. You know, that's not something which is credibility based in the sense that that judge is in a better position than either the board or for that matter us to make a determination about general human nature. Is there anything that actually goes to credibility with respect to that critical exchange between your client and Mr. Jarrell about the multiple actual convictions, misdemeanor convictions? I don't know because all we have is the paper record of what Mr. Jarrell said that came long after the hearing and after the fact that was tainted by being briefed on everything that went on in the hearing itself before the agency prepared by itself and without discussing it with opposing counsel the statement. I believe that that statement is tainted and is improper from day one. Clearly at the back of this, in the joint appendix, there's the motion where the agency attorney attaches all the different iterations of the stipulated testimony. And in this, in the first one that was done before I even had a chance to interview the witness or talk to him with counsel, he says, I've been advised that Mr. Christopher testified, this is on joint appendix 2008, I've been advised that Mr. Christopher testified this, that he said this, that I didn't make that statement. There's no kind of credibility in this Jarrell statement in the way that it was prepared in which the presiding official, the judge, was well aware of the problems. The problem we face here, though, is that the Jarrell testimony was not oral testimony. It was written testimony. There wasn't any occasion to make a demeanor finding with respect to Jarrell's testimony. The only possible demeanor finding with respect is with respect to Christopher's testimony. Yes, Your Honor. And that in each and every case where he found that he believed Mr. Christopher, I believe, over the stipulated statement of Mr. Jarrell, that he was indeed implicitly or explicitly making a credibility determination based on the testimony of the appellant. Okay, well, why don't we give you a couple of minutes of rebuttal if you need it. Thank you, Your Honor. Thank you, and we'll hear from Mr. Austin. Thank you, Your Honor. May it please the Court. The decision of the Merrick Systems Protection Board should be affirmed because it is supported by substantial evidence, it is in accordance with the law, and it is not arbitrary or capricious. So suppose hypothetically that we were to conclude that the administrative judge here did make a demeanor-based finding of credibility and believed Christopher's statement that he told Jarrell that he had multiple convictions and Jarrell told him not to worry about it. If that's the case, could we still sustain the Board's finding? Yes. Okay, and why is that? The reason for that is that it is – there are two basic reasons. Let me just begin by saying I dispute the – Your Honor, I understand. I understand that. There are two basic problems with that in terms of reaching for a claimant even with those assumptions. The first one is that it is undisputed in this record that one thing that Mr. Jarrell did tell Mr. Christopher is that he was required to answer all of these questions completely and to the best of his knowledge. Mr. Jarrell testified to that in his declaration. The Board found it. The administrative judge found that to be the case. And Mr. Christopher, on his appeal to this Court, does not contest that. In fact, he admits that Mr. Jarrell told him this. Therefore, if he was told to state everything to his knowledge, even if he told him that, it doesn't give him an excuse for filing an incomplete application. Second of all, as Your Honor indicated in your questions, the record is undisputed that Mr. Christopher knew far more than he wrote down in his form. So even if we accept that to – that he said this to Mr. Jarrell, his form is still inaccurate. Moreover, even with Your Honor's hypothetical for what was stated to Mr. Jarrell, there's a number of things he doesn't even contend he told Mr. Jarrell. He didn't tell Mr. Jarrell that he had been arrested for assault and convicted for assault on four different occasions, that on four different occasions he was given a sentence for between 10 months and 12 months. And on two of those occasions, he was incarcerated for 47 days, or one time 47 days, one time 157 days. So even under your hypothetical, he doesn't tell him he may go from 10 percent of the full facts to 20 percent of the full facts. He doesn't tell them the full story. So even believing all that, which of course the Board denied, it would still be a judgment for the government because the A.J.'s decision is not supported by the Supreme Court. Well, but it certainly would be sufficient to establish that the statement was not accurate, and I don't think anybody really could seriously contest that. That's right. The problem is one of intent. That's right. Because I think everybody agrees that there has to be an intent to deceive you. Well, under the law, as Your Honor pointed out, there has to be a reckless disregard for the truth. Well, a reckless disregard. Because one can infer an intent to deceive. Right, right. But therefore, it isn't necessary for him to show that he was completely accurate as long as he had a good faith belief that he was complying with the requirements that the form was interpreted by Mr. Jarrell. That's right. So why would his – if you assume the truth of his exchange as he testified to it with Mr. Jarrell, why would that not be enough to establish what the A.J. found, which was that he was acting in good faith? Because it doesn't establish that he was acting in good faith. Because even if he had the exchange with Mr. Jarrell as he said he does, he doesn't explain why he didn't tell Mr. Jarrell, oh, by the way, I was arrested and convicted and incarcerated. By the way, I was in jail for 47 days on one occasion and 157 on the other. By the way, I received sentences on four different occasions between 10 months and 13 months. He doesn't explain that even in his contested statement to Mr. Jarrell. So therefore, one can conclude even if he said that to Mr. Jarrell, he still isn't acting in good faith. He's still trying to hold the truth so that he has the motivation to withhold the truth. But that's an inference that you're drawing from the record based on his limited – but if – let me put it to you this way. Suppose that instead of what the administrative judge wrote in this case, the administrative judge had added a paragraph in which he said, what's more? I sat through the entire hearing. Was this a telephonic, by the way, hearing or was it an in-person hearing? It was an in-person hearing. In-person, okay. I sat through the entire hearing and I watched Mr. Christopher testify and I'm completely convinced based on his demeanor and the way he comported himself as a witness and the way he sought to give as accurate a testimony as he could on all points that were raised with him, I am completely convinced that there was not a deceptive bone in his body when he was filling out this form and he just got confused by his exchange with Mr. Jarrell. Do you win that case? I think it's a very much closer case than this one. I would say we would still win that case, but it's very, very different. Well, let me test a legal issue that's quickly getting lost. I thought I heard you answer Judge Dyke's question, his opening question. On what basis do you win, given that hypothetical? I thought you answered it two ways. The second way addresses Judge Bryson's question of how you weigh the evidence and who weighs it. But I thought I heard you say the first answer was, although you didn't quite phrase it this way, Mr. Jarrell could not, as an employee of the government, Mr. Jarrell cannot modify or detract from a legal obligation imposed by law on Mr. Christopher. Mr. Christopher had a legal obligation and understood it. I thought that was your argument. And the evidence shows, and he concedes he understood the obligation to be truthful on the form. I thought you were saying even if Jarrell had said to him, oh, don't worry about it, you can lie on this form, your answer would be, no, there's good case law that says government employees do not have the power to rewrite the law, and you can't rely on it. In fact, some of it's rather outrageous, but we have cases that say you can't rely on what you're told by an authorized government agent who is representing what the personnel requirements are. You have to go by what the law is, even if you don't know it. I've seen those cases. I find them, they make me uncomfortable. But I thought that's where you were going. Well, that was my third point. I certainly agree with Your Honor on that. But my point, my second point was that even if you believe, and Judge Daly was hypothetical, that this conversation took place, no one disputes that one of the things that Mr. Jarrell told Mr. Christopher was that you have to fill out this form completely, and you have to fill it out to the best of your knowledge, and one of the requirements on the form is an explanation of violation. And he didn't do that. First of all, even in the hypothetical, he didn't tell Jarrell. But the point is, the argument that I thought was going around was after having said that, Jarrell said, oh, don't worry about the details. And I thought your first point was, uh-uh, that doesn't count. Jarrell doesn't have legal authority to say that. Well, that's true. But the other point is that even with the details, they're not all details. They just go from 20 percent of the details to 40 percent of the details. There's no evidence in this case, like I said, that Mr. Christopher told Mr. Jarrell the full truth. I was arrested and convicted on four occasions. I was sentenced between 10 and 13 months. I was incarcerated twice. There's nothing about incarceration anywhere in either the form or what he told Mr. Jarrell. And therefore, even in the hypothetical, he doesn't do the complete truth. He doesn't act in good faith. I do want to address, and I think this is extremely important, the issue of deference to the administrative judge's opinion. The Hillen case is very clear that there is a difference between a credibility determination and a demeanor-based credibility determination. But the demeanor-based credibility determination can be implicit. It doesn't have to be explicit. Well, that's true. You know, the cases all say that, whether it be Habee or Naple, they all say that. But where do you draw that line? If there was ever a case where there is not implicit demeanor determination, demeanor-based, it's this case. And I would like to take, Your Honors, through the administrative judge's decision to show you just how obvious it is that this is not a demeanor-based case. If you go to page 42 of the appendix, what we pointed out in our brief that under the Hillen case, the administrative judge is required by the board to lay out what his credibility determinants are based upon. And there are seven specific criteria that are listed there. This administrative judge, as much as we agree with the board and do not agree with the administrative judge, did a 100% perfect job in demonstrating exactly what he was relying upon. The administrative judge cited the Hillen case six times. On each of the occasions, whenever he draws a determination, he cites specifically to Hillen, and he cites specifically to which of the criteria within Hillen that he is relying upon. Turn to page 42. At the top of the page, he cites to Hillen, 35 MSPR of 461. If you turn to the Hillen decision, page 461, you see that the credibility determination that is cited there is inherent in probability. And that is exactly what the AHA discusses. You turn to the end right after that. Again, inherent in probability, that's what he cites to. If you turn to the bottom of the page, the clause read by your Honor, he cites to end at 460 to 61. Well, that's a different criterion, Hillen, but not the demeanor criterion. That is contradiction by or inconsistency with other evidence. So the administrative judge lays out on that page specifically the criteria of credibility he's relying on and none of the demeanor. Now, in contrast to that, I will turn you to page 38. Before you leave page 42, there's a sentence that you skipped over. It's in the middle of the paragraph that starts, had appellant. And the sentence reads, while the response, that is the response on question 16, was incomplete, I find no intent to mislead or deceive as to the appellant's criminal record. There's no cite to Hillen at that point. That's on that sentence. Standing alone, that sentence sounds like at least it is subject to an understanding of being implicit demeanor-based. When I say, if I say I don't believe that you are intending to mislead the court, that could implicitly be based on my entire judgment of your presentation, including demeanor. Why not? I believe that that sentence indicates a credibility determination. I do not believe it indicates a demeanor-based credibility determination. Why? Because I understand that you believe. Well, because his contention is, and this court said in the Naples case, that whenever you have a case like this, falsification of records, you are always going to, not always, but predominantly, going to be relying on circumstantial evidence. That is because you are rarely going to have direct evidence of, you know, a claimant testifying, and yes, I believe I did not intend to deceive. So it's always circumstantial evidence. You're always going to have a claimant testifying that I did not intend to deceive. So merely a determination that that claim is correct is that I'm accepting this testimony. The question is, why are you accepting it? Why are you accepting that testimony? Are you accepting it because you observed the demeanor, because, you know, certainly he was just posturing, or whether or not, you know, his answers were consistent, whether they were quick, whether they were reluctant, that's what demeanor is. And there's no indication here, merely because the A.J. accepted his testimony, that he's accepting it because... But isn't that what non-explicit demeanor testimony reliance is? I mean, Leatherberry, looking at the record of Leatherberry, the Leatherberry case, the administrative judge never said, you know, I've watched Mr. Leatherberry over this testimony, and he looks like an honest guy to me, and, you know, he doesn't have sweaty palms, and he looks me in the eye when he testifies. Well, Leatherberry was really a case where the whole discussion of demeanor-based credibility and credibility was really a victim of the court, because there was, in Leatherberry... You have too many reasons, so I didn't care. And counsel, if we're counting citations, which you were counting citations for Helen, Ms. Brownlow cites Leatherberry five times in her brief and seems to think Leatherberry has a lot to say about this case, and that was, I was glad Judge Bryson raised it, because that was my next question to you. Certainly, I'll talk about Leatherberry. First of all, Leatherberry, I believe, is a case which there was no substantial evidence whatsoever to support the board's decision. And, therefore, whether or not the A.J. had come out just as the board did or whether or not the A.J. had come out to the contrary would not have altered the outcome in that case, because, and this came up with respect to the travel reimbursement question, and, I mean, it's just so completely different from this case. It was a case where Mr. Leatherberry actually asked his supervisors and other people to prepare the documentation for him. There's no effort to hide anything. There's no reasonable basis, and the court concluded this to conclude that he was trying to hide anything. There is a discussion, granted. It's interesting that you should say that, because it would have saved us a lot of effort. Ms. Stern, at the time she argued, Leatherberry had said just that. No, I understand that. I'm just looking at it. I understand that. Ms. Stern did take a different position. I would like to, this is after the decision came out, I would ask Your Honors briefly to look at pages 38 and 39 of the A.J.'s decision, because there is there a cite to Hillen, and there is there a cite to Domeno. And this is in connection with charge one, where the court had Mr. Boyle, and the A.J. cites to his reluctance to testify, and cites to 35 MSPR at 462 in Domeno Park. So this judge knows how to use Hillen, and he knows when he's basing it on something that he wants to base on Domeno, he knows how to cite it. And it's clear, and in a case where you have, on charge one, Mr. Christopher testifying, Mr. Boyle's a liar, and the A.J. obviously didn't believe him there. How you can imply that his demeanor is something that he accepts without explicitly saying it or read between the lines, this just isn't the case for that. And then he goes on, on page 39, two different instances to cite to the other non-demeanor-based factors in Hillen. This sounds a little bit sophisticated in the sense that, you know, it's sort of analyzing the A.J.'s decision line by line. I mean, looking at it, you know, objectively, it seems to me that he looked at this guy and believed him on this particular point, about how he recites the testimony very explicitly about it, telling him about the multiple convictions, and how he said, don't worry about it, and all that. And then he comes in later on and says, I believe him. So it's a little hard for me to see that as not being based in part, at least, on the demeanor. Your Honor, I'll finish it right on the difference between credibility determination from a demeanor-based credibility determination. Yes, he believed him, but he believed him not because he looked in his eyes and watched his posture or watched the way he testified. He believed him because on his analysis of the other evidence of the case, the corroboration of what he was saying, it's not because he said it. It's not because of the way he said it. It's because the other evidence in the case demonstrated to him that that testimony must be true. And that is the difference they're talking about in Hillam, the difference they're talking about in Havey, between demeanor-based credibility determination and credibility determination. Well, I'm just, this is just a comment. I'm wondering whether you really want to leave that much room for overturning credibility determination. I mean, after all, most of the time you come in here and argue that, you know, the Board's findings about credibility are basically immune from our review. I do, but I mean the case is safe. It's demeanor-based. It's a different standard. I'm just saying this is not a demeanor-based case, and therefore that standard just doesn't apply here. Well, you're taking the position this is this important subset of all credibility cases. I mean, most of the time you come up here, you've got the Administrative Judge having made a credibility determination which the Board accepts against the employee, and you say that's basically unreviewable. Where the Board reverses the Administrative Judge's ruling on credibility in favor of the employee, then this whole set of special rules applies. And you say in this case this was neither expressed nor under the circumstances can be viewed as implicit. That's right. This is not a demeanor-based one. My time is out. If the Court has any other questions. Thank you. Thanks a lot. Ms. Brownlaw, we'll give you a couple of minutes for rebuttal if you need it. I realize that it's hard to quantify implicit credibility determination. If you go back to some of the factual analysis, how much time did he spend in jail and what was it for? This was a situation, and if you look at the paperwork, it's very confusing even as a lawyer, because when his wife called up and had him taken away, he sat in jail until he went to hearing. It's hard to separate what was his time awaiting hearing, because he could not postpone, and what was his time that was what he was sentenced to or what he was incarcerated for as a result of the violation itself. This is most of the time he was given probation. I think at one time he was given work release for 30 days, and one time he was given six days. Everything else was a probation type of sentence. However, you have all these days of incarceration that have nothing to do with the sentences that were imposed by the court, because he was carried away from the house drunk, had no money, and had no ability to post bail, and his wife didn't do it for him. So it's very difficult for him to separate in his mind, this is not a legal scholar, this is a welder. This is not, I don't think necessarily even a high school graduate, this is a blue collar worker. He's trying to describe what happened. He's trying to describe what happened while he was drunk and coming off drugs, and he explained all that in his testimony before the judge. Can I ask you a question that I was left unclear about, two questions actually, very briefly, in the record I was unclear about. First, what's the contempt of court 2001 about? Because that floats in and out of the record, but I wasn't clear. And what his memory is, was that he was stopped one night, he was taken downtown, he was kept overnight, there was some kind of mistake identity kind of thing, and that he was released. But he had a conviction, right, for a contempt of court. The record seems to indicate that in 2001, there was a conviction entered against him for contempt of court. And, you know, this is the NCIS report, we never had anybody clarify what this was about for anything. I don't want to use up all your time. But the answer to Judge Bryson's question is, the board didn't rely on the contempt of court conviction. I don't believe it, do you? All right, all right. Now the, well, that's all right, go ahead. Sorry, I threw you off. I'd forgotten what I was going to say, and I apologize to the court. I apologize. There was something that was said by the other side, and I cannot bring it back to my head. I apologize. Okay. Unless you have any other questions, I'm done. Thank you. Thank you both, counsel. The case is submitted. We'll hear argument next in number 2008-5055, broadcasting against the United States. Mr. Evans, when you're ready. Yes, may it please the court, I am Donald Evans, appearing here this morning on behalf of Biltmore Pools Broadcasting. I think we find ourselves this morning in sort of a strange no-man's land between the jurisdictions of two courts, both of which seem to have exclusive jurisdiction over some part of the matter that's at issue here, and both of them say that the other court is the one that should take jurisdiction over it, with the result that neither court, and no court, is taking jurisdiction over a field of commercial activity by the FCC that involves billions of dollars in auction monies and some pretty fundamental constitutional issues as well. What I thought I would talk about this morning with the court's permission is... Constitutional issues. What's the constitutional issue that you're raising? If you take the decision of the Fulton panel to its ultimate conclusion, which I think will come up in the course of what I'm going to talk about, the Court of Federal Claims does not have jurisdiction to even hear a takings claim. Well, but you're not raising a takings claim as I understand it today. Well, I am raising a takings claim in two respects. Well, let me go back. The complaint does not assert a takings claim, correct? No, it does not. All right. But the reason takings is relevant to our discussion today is because the Fulton Court seems to suggest that the Court of Federal Claims has no jurisdiction over anything that relates to an FCC licensing contract. I don't read it that way. I think what you have here is a situation if the breach of contract claim is based on a regulatory violation, you have to go first to the D.C. Circuit to find out whether there was a regulatory violation. Okay, and if there was a regulatory violation, then presumably the D.C. Circuit would remedy it, but the D.C. Circuit would not address the contract issues. Well, it may be that if you were to convince the D.C. Circuit that there was a regulatory violation, then you might be able to come back to the Court of Federal Claims for a contract remedy. Nobody is saying, as I understand it, that if there was a regulatory violation which led to a breach of contract, that the damages remedy, if there is one, doesn't come in the Court of Federal Claims. No one is suggesting that you get a damages remedy in the D.C. Circuit. Well, maybe I'm misunderstanding what you're saying, but I think there is that suggestion, because what the D.C. Circuit does when it reviews licensing decisions of the FCC and really other administrative reviews that it does of other administrative agencies is it looks at the administrative issues that are presented to it and it decides them under the usual APA criteria. And unvaryingly, if there's a contract claim or a takings claim, they say, hey, take it to the Court of Federal Claims. That's not for us to decide. You may have an issue, but we're not going to decide it. I think that what Judge Dyke is pointing at is the administrative law notion that before you have a contract right, a property right, you first have to determine whether under administrative law you have a recoverable position. That is, you first have to determine whether you have a property interest, either contract or property under the takings clause, and that depends on whether there was an administrative determination that you had such an interest. I think what Judge Dyke is pointing to is the question of whether in view of the D.C. Circuit holding that there was no violation of the FCC's procedures, you don't have either a contract right or a property interest that could possibly be heard. You might have if they held there was a violation of the FCC process, but the D.C. Circuit did you in on that issue and the Supreme Court isn't interested, so there you are. Do I misread your point? No, that's correct. And, of course, for a takings claim, the action has to be authorized, so you might still have a takings claim if the D.C. Circuit said that an action was authorized, but since you are only asserting a contract claim and the premise of your contract claim is that there was a regulatory violation and the D.C. Circuit has said there was no regulatory violation, Judge Ploeger says you're dumb, right? Well, I take issue with the premise of your statement because the D.C. Circuit only reviews regulatory violations by the FCC. I have no doubt whatsoever that had I presented my contract claim to the FCC, they would have said you may have a contract claim, but you've got to take it to the Court of Federal Claims, and, in fact, that's exactly what they did in the case that I brought to the Court's attention on Monday. There was a radio licensing case. Apparently, there was some contract issue where the applicant was saying he had a contract with the FCC, and the Court said we're not going to look at that. But to get precisely to your point, Judge Dike, I actually... That was not part of the licensing. That was part of a testing arrangement, as I understand it, that North Point had authorized this independent tester, under the understanding and the undertaking with the FCC that that examination and the consequences of the study would be used only with respect to North Point's licensing and not used in other ways. I mean, that's not part of the actual auction dispute. Well, it wasn't an auction dispute, but it was a contractual dispute, and it was a little hard to tell from where... It wasn't, as Judge Bryson's saying. The theory wasn't that there'd been a regulatory violation which led to a violation of the contract. There was a separate licensing agreement between the individual and the FCC that let the FCC use its technology. So, of course, that came to the Court of Federal Appliance. But where you're saying there was a contract violation because there was a regulatory violation, we said you've got to go first to the D.C. Circuit, and you're out of court unless you succeed there. Well, that's where I'm disagreeing with you, respectfully, Judge Dike. I think conceivably, and make no bones about it, what we wanted here in the first instance was the license. The license has value apart from its monetary value, and that's why we took it to the Court of Appeals and eventually to the Supreme Court. We wanted the license. We know now that we can't get the license. That's been decided against us, but we do have the comfort of the fact that we had a contract with the FCC where they obligated themselves... What was the contract with the FCC? Can we explore that for just a minute? May I just finish? Oh, I'm sorry. I thought your point was complete. I think we could actually, if we had decided to go this route, we could have gone directly to the Court of Federal Claims once the FCC said we're not giving you the license because we had a contract right, and it would have been breached at the point where the FCC gave the license to somebody else. The court of the D.C. Circuit reviewed the FCC's action for its compliance with various regulatory criteria, the ones I talked about, you know, substantial evidence in the record, compliance with the law, and so forth. And they could make that determination, even if they felt that we had a contract with the FCC, and even if they felt that a contract had been breached. They would say, yes, the FCC, in its wisdom, in pursuing the public interest, awarded the license to somebody else. Now, if they had a contract with you, to the contrary, you can take that case to the Court of Federal Claims and get it resolved there, and you're entitled to damages. But that doesn't affect the D.C. Circuit's decision that the regulatory decision of the FCC was still proper for whatever reason. Well, the for whatever reason seems to me to be a problem for you in this case because what the D.C. Circuit said, if I understand it correctly, is that your contention that one of the parties to the auction should not have been allowed to participate was exactly, and that's the predicate for your contract claim, that's exactly what the D.C. Circuit said. The FCC did not err with respect to allowing them to participate based on a late-filed family certificate. Well, what they said was that it was not unreasonable for the FCC to decide the matter the way it did. And so that does not resolve the question of whether, in fact, the contract between the FCC and us was to the contrary. As I said in my brief, you can have two parties to a contract, both of whom have reasonable positions about it, but that doesn't resolve what the idea is. But isn't your contract, your contract is an implied contract, right? Yes. You don't have a written contract, a side deal with the FCC saying, by the way, we will kick Liberty out if they don't file on time. So it seems to me your whole contract right is tied up with the legal obligation of the FCC to kick Liberty out if they don't have a family certificate filed on time, right? Let me give you an example. Well, let me make sure I understand your position on it. Isn't that the predicate for your contract action? Yes. Nice. And in which case it's pertinent, it seems to me, that the D.C. Circuit has said that predicate does not hold water. Well, no, because what the D.C. Circuit did not answer the question that would be before reporting federal claims. All they said was it was not unreasonable for the FCC to do what they did, okay? And I'm bound by that. I accept that. But that doesn't mean that, in fact, there was a contract that the FCC had with my client. A contract? Yes. Predicated on whether or not it was permissible for the FCC to accept Liberty's late-filed certificate. Right, but the entire contract, remember, is based on all these written public notices and regulations that are what we say apply to the auction contract. Right, which the D.C. Circuit said that they don't. Or at least you lose with respect to that issue, right? Well, I know I disagree with you, because I think that because of the particular regulatory avenue that the D.C. Circuit takes with respect to reviewing administrative decisions, they didn't have to reach the question, and they didn't say whether they would have decided it the same way as the FCC if they had decided it in the first instance or not, which is what the court of federal claims would have to do. All they said is this wasn't unreasonable for the FCC to decide it that way, and that's all their job is to do. But that means it's not unreasonable, and hence there's no regulatory violation, and you're coming in and saying, well, we ought to disagree with the D.C. Circuit and say there was a regulatory violation. No, what I'm saying is there wasn't. I'm saying there's no regulatory violation. That's been decided. That's final now. We can't challenge that. The example I want to give you that may clarify your question, Judge Stein, is this is a real-world example. Earlier this year the FCC had an auction. They sold 700 megahertz licenses, and at the end of the day the licenses had almost all been bought by big companies. Everybody had complied with the terms of the auction. The big companies paid their money in, and there came a howl from Congress and from some of the public interest groups that in fact the auction had been not conducted properly because the intent of Congress was that small companies should get the licenses. Now, let's say that the FCC had decided at this point after the auction was over that, yeah, maybe we should have given these licenses to small companies instead of the big companies that actually won. Presumably they could have decided that. The D.C. Circuit could have said, yes, you justified that as a regulatory decision. It violates the contract that you made with these people, but at least it passes muster as a regulatory decision. So what the D.C. Circuit decides does not necessarily control what I think the Court of Federal Appointments has to decide. If you have a minute before you sit down, would you tell me what your contract is? The contract is the usual contract that's involved in any auction situation, which is the high bidder is obligated at the end of the auction when the gavel comes down, and this is what the FCC has itself said is involved in its own auctions. When the gavel comes down, the high bidder is obligated to pay the amount that it's bid, and the seller, the FCC, is obligated to give the high bidder what it was bidding on. But you weren't the high bidder. Well, I mean, our position is that we were the high bidder because under the terms of the auction, the bidder that outbid us was completely ineligible to participate and should not have been. Except that the District of Columbia said they weren't ineligible. What are we supposed to do with that? They didn't say that they weren't ineligible. All they said was that the FCC's determination that they weren't ineligible was valid, was lawful. It was not unreasonable, but if we had gone directly to the Court of Federal Claims... Yeah, that's where I want to go with you. Let's assume you hadn't even appealed what the FCC did. You went directly from the FCC to the Court of Federal Claims. What would be your contract theory before the Court of Federal Claims? Exactly what I just told you, that the FCC laid out in its rules and in its public notices certain terms that apply to the auction of these licenses. My client complied with all the terms that the FCC set out and placed the highest bid among the qualified bidders under the terms of the auction. The other bidder, the bidder that the FCC gave the license to, while we consider breach of the contract, the public notice, if you look at what we put in the brief, it's all in the contract. What do you think the Court of Federal Claims would have done with that? Probably would have cited Fulden and turned it into a case. Well, if you look at the trial process... Or they might have said you hadn't exhausted your administrative remedies. They might have said that, but I think they would have been wrong, because at that point we wouldn't have been trying to get a license anymore. We would have just been trying to breach the contract. What would your answer, if they had said Fulden seems to answer the case, what would your answer to the Court of Federal Claims judge have been? This is another way of saying, what's your answer to Fulden now? Well, the judge, the trial court did say to Fulden. Right, in this setting, but that's not exactly the same thing. But why do you say, let me put it this way. Do you argue that Fulden is distinguishable, or simply that it ought to be reconsidered? Well, the reason we suggested that this case should have gone to the court here on Bach is really two things. Because I think, at least, it addresses a very important disconnect between this Court and the Court of Federal Claims and the D.C. Circuit. Because the D.C. Circuit thinks that you can take these contracts and take these claims to the Court of Federal Claims, and the Court of Federal Claims thinks it can't. Okay, but make sure you answer the part of the question as to whether you're distinguishing them. Yes, so that was my preference, and I think it still is what I would hope the Court would do. But if this panel decided not to do that, the fact of the matter is that the Fulden case did not involve a contract. The trial judge, the trial court in Fulden, found that there was no contract. The appellate court here did not disturb that finding, and in fact analyzed the whole situation on the basis that, even though it had been characterized as a contract by the plaintiffs, it was at root a complaint about the administrative proceedings of the FCC. And it was on that basis that both the trial court and this court, the Fulden panel, decided the case. So you changed your position, because when you originally asked for in-bank, you said Fulden is indistinguishable. I think that's true. The language in the Fulden case is very, very broad, and if you treat it as covering this case, that's correct. But the fact of the matter is, if there had been a contract in the Fulden case, A, it might have been decided differently, and B, the decisions of both the trial court, well, certainly the appellate court, would not have been different with respect to the broader jurisdiction of the court of federal policy. In terms of your contract theory, you're not arguing that the government had a duty, the FCC had a duty of fairness or conformance with its own regulations in dealing with the auction, and that that was breached by their not requiring the certificate to be filed. You're not making that contract argument, are you? No. I mean, that's the way the trial judge here would have reformulated the case, but I don't think that is the case. What we are arguing is that we actually had a contract with the FCC and it was simply breached. Why don't we hear from the government, and we'll reserve a couple of minutes for you. Thank you. Mr. Behar. Thank you, Your Honor. May it please the Court, this Court should affirm the decision of the trial court dismissing Biltmore's complaint because the trial court correctly held that it was found by Fulton in this matter, and that despite the fact that Biltmore has characterized this lawsuit as breach of contract action, in fact, what is challenging is the FCC's ultimate decision to award due. Do you think, let me see if I understand what your position is in gross before you get into the details. Sure. Do you think that there's any contract claim that survives the D.C. Circuit's judicial review of the FCC's action in any of these kinds of cases? That is, if someone is complaining that the license should have been granted to them and it was not granted to them because of a violation of the rules applicable to the auction, is there only remedy to go to the D.C. Circuit in a 402B judicial review proceeding and no damages remedy at all, or are you saying that the damages remedy is separate, it belongs in the D.C. Circuit somewhere between the district court and the court of appeals, or are you saying that any damages recovery has to wait until after the D.C. Circuit rules, and if they rule that in fact, well, however they rule that there remains some opportunity for a recovery but not here? The government's position, Your Honor, is that with regards to a challenge in the hypothetical you presented, there is no remedy for damages because the auction process does not create a contract between the FCC and each bidder on that auction. And is that because the government, is that because Congress has created a whole administrative mechanism that effectively avoids any claim of implied contract right that would normally arise in a common law auction type situation? Is that your contention? In part, Your Honor, I think part of the response to this is that the whole licensing scheme itself, as set forth by Congress in these varying regulations and statutes, is not a commercial transaction that creates a contract between even the FCC and the winning bidder at auction. But you keep arguing that it does create a contract. When they don't pay, you sue. And next wave, you admitted there's a contract. And there are lots of cases that suggest that if you're the winning bidder at an auction, you have a contract. And suppose somebody says, I'm the winning bidder. I should have gotten the thing. There's no other party involved. And they go to the D.C. Circuit. The D.C. Circuit says, You're right. FCC, give them the license. And then they say, Well, we've gotten the license two years later than we should have. We're entitled to breach damages during the interim. I'm not saying whether those should recover or not recover. But don't they have the right to come back to the Court of Federal Claims and say, Okay, now we've shown the FCC should have given us the license two years earlier. We want damages. Why doesn't the Court of Federal Claims have jurisdiction over that? Well, the FCC has taken the position that between the winning bidder at auction, there are what can be characterized as contractual obligations with regards to paying for that license. With regards to why the Court of Federal Claims will not have jurisdiction, Your Honor, the reason the Court of Federal Claims will not have jurisdiction is because the Communications Act specifically says that all challenges with regards to the FCC's licensing actions are presented to the D.C. Circuit. In my hypothetical, they did. And they presented it to the D.C. Circuit. The D.C. Circuit said, You're right. Give them the license. But the D.C. Circuit doesn't have authority to give them damages for the two-year delay, does it? No, it does not. Of course not. Nor, you say, does this Court of Federal Claims. That's our argument. And the reason for that is what? Is the Communications Act. Well, there's nothing expressed in the Communications Act that says, Oh, by the way, the Court of Federal Claims can't give damages for delay in award. No, there is not. And so where do you get it? Well, in Folden, this Court considered the legislative history behind the Communications Act, which pretty explicitly stated that all challenges with regards to FCC licensing actions are to be brought before the D.C. Circuit. Well, but at least arguably, set aside Folden for a minute, there's at least arguably a difference between a challenge to the failure to award me a license as opposed to an attempt to recover damages caused by an erroneous failure to award me a license, right? That's correct, Your Honor. Right. Now, why is it that it's your position that the latter is covered by the preclusive force of Section 402F? Or B, I'm sorry, B. Simply because under the sort of broad reading of the statute and the legislative history behind it, it basically says that everything arising out of these actions goes to the D.C. Circuit. Does that position compel you, however, to disagree with the assumption a minute ago that the D.C. Circuit doesn't have authority to grant damages in enforcement action under 402B? That is to say, it's clearly not a Tucker Act case, because Tucker Act is over in the Court of Federal Claims, but why doesn't your position force you into having to concede that if there are contract damages, if there is a contract, as you insist there is, between the winning bidder and the government for some purposes, why can't the winning bidder turn around and say, okay, then I want damages, and I want the damages awarded through the District of Columbia Court of Appeals or District of Columbia? Well, hypothetically, Your Honor, I suppose it's possible that a winning bidder, under the hypothetical view that Judge Rosen had presented, might be able to bring a breach of contract claim with regards to that delay. In the District of Columbia? District Court? Court of Appeals? Where would it be? Yeah. It has to be in the D.C. Court of Appeals under your theory. That's correct. Under our theory and under the rubric set forth by Fulding, which states that there's no type of requirements that should be used by the court. Fulding agrees with your theory? Correct. So under that theory, they've got to be in the D.C. Circuit? Hypothetically, they would have to be in the D.C. I'm not sure where else they would be able to bring those claims. Let's change the contract issue for just a minute, even though Mr. Evans didn't plead it. How about if they pled breach of contract being duty of honesty, directness, forthrightness, administrative procedure, and so on, that there was an obligation on the government to hold the auction in accordance with the terms that it held out, these people paid good money in terms of a deposit or whatever was required, and the government breached that duty of care. And is there a remedy for that breach? And if so, where? And just to clarify, we're talking about an unsuccessful bidder who's bringing this out? Yes, we're talking about Mr. Evans' client. I don't think there is a remedy in the Court of Federal Claims. I think in that hypothetical, what the unsuccessful bidder is doing is essentially recharacterizing a challenge to a regulatory action as a breach of contract simply in an attempt to get into a separate forum. There would be no reason if they disagreed with the determination of the FCC as to whom the eligible bidder on the license was, they couldn't do exactly what Biltmore did in this case, which was bring that claim to the D.C. Circuit. They might bring it to the district court as a general contract claim, administrative law violation. They didn't deal fairly. I'm sorry? They didn't deal fairly. Correct, Your Honor. I think in that case, though, we would still be looking at 402B, which would preclude a claim in the district court. I think your hypotheticals sort of point to the fiction that serves as the basis of Biltmore's claims here, which is they weren't the successful bidder for this license. The only way we can accept that they have a contract is if we allow the Court of Federal Claims to basically go back and reconsider the FCC's original determination. But they would be the successful bidder if the D.C. Circuit had said they were the successful bidder, and then there'd be a contract, wouldn't there? Had the D.C. Circuit said they had been a successful bidder? Yeah, they should have been given the license, because the other bidder was disqualified and they were the next highest bidder and they should have gotten the license. So then they'd have a contract, right? Well, again, the government's position is there's a contractual obligation with regards to payment for the license, and the FCC will award the license at that point. The license itself is not a contract with the FCC. No, of course not, but it's a contract about the license. With regards to the obligations of the granting of the license. Yeah, your obligations, their obligations. So there's a contract, right? Yeah, they agree to pay, you agree to give them the license, the D.C. Circuit says there was a contract. Under that hypothesis, had the D.C. Circuit made that finding? Your argument could be, well, it's a contract for some purposes, but not for all purposes. If they don't pay, if they don't pay, where do you go to get your money? If the winning bidder does not pay? Well, I believe the answer is... Do you go to a district court? And if so, under what jurisdiction? Is this a 402A enforcement action of a sort? I believe 402A, A and B sort of cover the entire license. Right, and we've been focused on B, but A is, I take it, generally in.